State vs. Patton et al.   State ex rel. Shakespere et al. vs. Patton et al.

in furtherance of the directions of the Constitution to which we have alluded, and particularly as regards the holding of a municipal election in New Orleans, although the year 1880, within which the same was expected to be ordered and held, will have elapsed when they convene again.

In consequence of the views which we hold and announce, the municipal officers elected on the 2d of November last, are enabled at once to enter upon the execution of their mandate ; a new administration is inaugurated and laws heretofore in existence continue in force until repealed or amended by the Legislature.

The judgment of the lower court was in favor of the relators. It has made a sound exposition and application of the law, and so has done justice.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court, in the above consolidated cases, be affirmed at the costs of the appellants in both courts.

No. 7674.

32 1213
51 1871

STATE EX REL. T. W. COLLENS VS. E. A. BURKE, TREASURER, ET AL.

Warrants for the salaries of constitutional officers, when the amount of such salaries is fixed by the Constitution, are entitled to be paid out of the general fund of the State by preference and priority over all other warrants drawn against such fund.

These constitutionally preferred creditors stand and must be maintained on a basis of perfect equality.

But, under the provisions of the Ordinance of the late Convention, declaring that " all moneys received in the treasury for all taxes and licenses due the State prior to the 1st of January, 1879, etc.," the Mandamus must be disallowed and Relator's Petition dismissed.

APPEAL from the Fifth District Court, parish of Orleans. *Rogers, J.*

E. Howard McCaleb for the Relator and Appellee.

J. C. Egan, Attorney General, for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J. The relator was a constitutional officer, viz : a District Judge, created by the Constitution of 1868, and whose salary is fixed by said Constitution at not less than five thousand dollars. The Legislature having fixed the salary of the office at exactly the lowest limit prescribed by the Constitution, the case is, in every respect, for present purposes, the same as if that salary had been fixed at that precise amount.

His petition represents that he is holder of warrants issued by the

78

State Auditor for his salary for the years 1874, 1875 and 1876, and payable out of the revenues of said years respectively; that he has presented said warrants to the State Treasurer, and has repeatedly demanded payment of the whole or a part thereof out of the revenues of the State for said years respectively, collected since their date; and that the treasurer has failed and refused to pay any part of the same, without lawful excuse and in violation of his ministerial duty; and prayed for a mandamus ordering him to pay said warrants out of said revenues.

The Treasurer failed to file any answer upon the rule *nisi*, but the case went to trial and evidence was taken, and the Treasurer himself appeared as a witness.

The material facts appearing from the testimony, are:

1st. That there was on hand in the General Fund of the State for the year 1874 $978 68; for the year 1875, $1701 78; for the year 1876, $2817 34.

2d. That there were outstanding warrants upon the General Fund of 1874 to the total amount of $37,253 03, of which warrants $13,406 were in favor of constitutional officers, and $23,847 03 for other miscellaneous expenses of the State.

Upon the general fund of 1875, to the total amount of $14,198 61, of which $9899 55 in favor of constitutional officers and $4299 06 for other expenses.

Upon the general fund of 1876 to the total amount of $63,555 66, of which $28,937 55 in favor of constitutional officers, and $34,618 11 for other expenses.

3d. That the appropriations for the said several years would probably exceed the revenues thereof.

The case, as to its substantial facts, is similar to that of State *ex rel.* Boyer, 32 A. 177. There, as here, the mandamus was claimed upon the ground that the relator's warrants, being for the salaries of constitutional officers, they were payable, by preference, out of the general fund in the treasury. The Court declined to pass upon the question on the ground that, even conceding it to be correct, yet the evidence showed that there were outstanding a large amount of constitutional warrants of like dignity with those of relator, far exceeding in amount the funds on hand, and that to issue a mandamus directing the treasurer to pay those held by him "would," in the words of the Court, "entitle the relator to take the whole sum for his warrants when other warrants of equal dignity were awaiting payment."

The reasoning is entirely satisfactory to our minds so far as it precludes the possibility of issuing a mandamus directing the Treasurer absolutely to pay relator's warrants without regard to the rights of

State sx rel. Collens vs. Burke, Treasurer, et al.

other holders of like warrants. But we cannot assent to the conclusion under which any relief whatever was denied to relator. ·

In that case, as in this, there were funds in the Treasurer's hands, and out of those funds the relator had the right to receive *some* payment; the corresponding duty rested on the Treasurer to make *such* payment; that duty, ascertained from the law, was a ministerial duty ; the Treasurer had failed and refused to make any payment, thereby violating his said duty. We consider this a proper case for mandamus ; and although we may not grant the whole relief asked, we must determine what was, if any, the right of relator, what was the corresponding duty of the Treasurer, and we must issue mandamus directing the performance of such duty.

Under these views, we feel constrained to examine this case upon its merits to ascertain the rights and duties of the parties under the pleadings and the evidence, and to award the relator such relief, appropriate under the allegations and prayer of his petition, as we shall find him entitled to.

For this purpose it is absolutely necessary that we should settle the relative rights of holders of different classes of warrants all drawn upon, and payable out of, the general fund.

After much consideration, we have reached the conclusion that warrants for the salaries of constitutional officers, when the amounts of such salaries is fixed by the Constitution, are entitled to be paid out of the general fund of the State by preference and priority over all other warrants against such fund.

It does not seem difficult to demonstrate this proposition, upon admitted principles, and with such conclusiveness as cannot admit of question.

It cannot be denied that the mandatory provisions of the Constitution, when not in conflict with the Constitution of the United States, must have effect and must be obeyed and enforced by all functionaries of the government, and cannot be defeated, directly or indirectly, by any action of any department of such government.

The Constitution of 1868, article 83, expressly provided that there should be seven District Courts for the Parish of Orleans, and one judge for each of them. Article 84 further unequivocally commanded that " each of said judges *shall receive* a salary, * * * which shall never be less than five thousand dollars."

If the relator, who was a judge of one of said courts under said . Constitution, shall not *receive* his salary, it is manifest that the Constitution will be directly violated.

It has been expressly decided that the Legislature of the State was incompetent to abolish the court over which relator presided, and an

act of the Legislature, actually passed for that purpose, was declared by this Court to be null and void.

It is very clear that if the Legislature had passed an act reducing his salary below five thousand dollars or providing that he should not receive a salary to that amount, it would have been equally null and void.

Any law or laws, or any construction of any law or laws, or any execution of any law or laws, the effect of which would be, directly or indirectly, to prevent relator from *receiving* his aforesaid salary, would be, in like manner, and to the extent named, unequivocally violative of the Constitution ; and it would be the duty of the courts to refuse to give such effect to any law and to prevent and restrain such construction or execution.

The Constitution of 1868, as amended, also defined and limited the legislative power of taxation ; and during the several years for which the salary of relator is herein claimed, the Legislature exhausted its power of taxation. If relator should not be paid out of the revenues derived from such tax, he could not be paid at all, because no additional tax for said years could be levied and no additional revenue obtained. If it were true that the Legislature, after exhausting its power of taxation and raising the whole revenue possible, could proceed to make appropriations, for such purposes as it might choose, to an amount three times as great as said possible revenue, and could then require said revenue to be distributed *pro rata* among the holders of all warrants issued under such appropriations including constitutional salaries of constitutional officers, it is manifest that this would operate the practical reduction of such salaries to one-third of the amount fixed by the Constitution. We could not recognize the existence of such power without permitting the annulment of the Constitution and emancipating the Legislature from constitutional subjection.

The Constitution undoubtedly intended and required that the salaries fixed by itself for the officers created by itself should be paid, in any and all events, out of the revenues which it authorized the State to raise by taxation.

A large discretion rests in the Legislature as to the purposes to which it may, in its wisdom, appropriate these revenues ; but that discretion, like every other power, is subject to the control of the Constitution, and must only be exercised without prejudice to rights guaranteed by that highest authority.

It follows that the power of the Legislature, in directing the disposition of the revenues of the State, is confined and limited to the excess of such revenues over and above the amounts required to pay the sums specifically ordered to be paid by the Constitution itself.

These propositions are so conformable to reason that it is not deemed necessary to further enforce them by the application of other equally settled principles affecting the independence of the several departments of the government, which would be seriously threatened under any different view of legislative power.

From the views thus laid down it results that the relator herein is entitled to have the warrants presented by him paid out of the general funds, shown to lie in the Treasurer's hands, by preference and priority over all other warrants, except warrants of those constitutional officers whose salaries are fixed by the Constitution, and who, therefore, have equal rights with relator.

These constitutionally preferred creditors stand, and must be maintained, on a basis of perfect equality. We cannot recognize the right of the Treasurer to enforce any system under which one of them may claim preference over another by reason of any priority of registry or of presentation of his warrants for payment. No law authorizes such preferences, and no officer has the right to create them.

It is the absolute, ministerial duty of the Treasurer to distibute the money to the credit of the general fund for the years referred to, *pro rata* amongst the holders of all outstanding warrants for salaries of constitutional officers whose salaries were fixed in the Constitution of 1868, and to pay forthwith to relator his share of said funds as ascertained under said distribution. Relator is entitled to a mandamus to this effect.

We have not been unmindful of the delicacy of our position in deciding questions of this character; but we have been able to discover no ground upon which we could justify a refusal to adjudicate upon the right of relator herein, especially as they arise exclusively under the Constitution of 1868.

In the Boyer case, our honored immediate predecessors announced that they would decide these questions when properly presented; and we also follow a precedent set by the esteemed court organized under the Constitution of 1852 in the case of State vs. Lea, 14 An.

For the reasons herein given, it is ordered that the judgment of the lower court, making peremptory the mandamus as prayed for in the petition, be now amended so as to order and command E. A. Burke, State Treasurer, to distribute *pro rata* the funds in the treasury standing to the credit of the general fund for the years 1874, 1875 and 1876, exclusively amongst the holders of outstanding warrants for the salaries of said several years respectively of constitutional officers whose salaries were fixed in the Constitution of 1868, to the extent necessary to satisfy the same, and immediately to ascertain and pay to relator the share coming to him under such distribution; and that, as thus amended, the

State ex rel. Collens vs. Burke, Treasurer, et al.

judgment appealed from be affirmed, defendant to pay the costs of the lower court and relator to pay the costs of this appeal.

### On Application for a Rehearing.

FENNER, J.  This Court is not, in any degree, responsible for the necessity which it is under of reconsidering the original decree herein rendered.  The case was decided, and correctly decided, upon the issues presented in the pleadings and arguments of counsel.

In an application for rehearing, the Attorney General has, for the first time, called our attention to the provision of an ordinance of the late Constitutional Convention, declaring that "all moneys received in the treasury for all taxes and licenses due the State prior to the 1st of January, 1879, except such as are otherwise provided for by this ordinance, shall be set aside to pay the interest on said five-dollar bonds and to provide a sinking fund to redeem the same."

The funds involved in the present controversy are " moneys received in the treasury for taxes and licenses due the State prior to the first day of January, 1879," and are not " otherwise provided for " in said ordinance.

They, therefore, are subject to the provisions of the ordinance. However hard may be the case of relator in having his vested rights in those funds thus destroyed, the sovereign authority of the State has so decreed and he must submit.

State ex rel. Folsom vs. Mayor, 32 A. 709.  Argument having been heard upon this application for rehearing, it is not necessary that a rehearing should be granted before disposing of the case.

It is, therefore, ordered that our former decree herein be annulled and set aside ; and it is now ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, that the mandamus be disallowed and relator's petition dismissed at his costs in both courts.